IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

AMBER M.,[1]

       Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

       Defendant.

Civ. No. 6:23-cv-01420-MK

OPINION AND ORDER

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Amber M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allowing a Magistrate Judge to enter final orders and judgment per the Federal Rule of Civil Procedure 73

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

and 28 U.S.C. § 636(c). *See* ECF No. 5. For the following reasons, the Commissioner's final decision is REVERSED for the immediate payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed her applications for DIB and SSI in June 2020, alleging a disability onset date of January 1, 2020. Tr. 498-509. Plaintiff's claims were denied by an administrative law judge ("ALJ") on July 18, 2022. Tr. 279-301. Plaintiff timely appealed the ALJ's decision, and the Appeals Council denied review on August 9, 2023. Tr. 1-7.

This appeal followed.

## FACTUAL BACKGROUND

Born in 1995, Plaintiff was 24 years old on her alleged disability onset date. Tr. 338. Plaintiff has a college degree in agricultural sciences. Tr. 317. Her past experience includes work as a retail salesclerk, waitress, and an entertainer. Tr. 292. She alleges disability based on joint pain, inflammation, attention deficit disorder, depression, multiple autoimmune disorders, gastritis, and chronic fatigue. Tr. 338-39.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

3 – OPINION AND ORDER

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2024, and had not engaged in substantial gainful activity since her alleged onset date of January 1, 2020. Tr. 283, 285.

At step two, the ALJ found that Plaintiff had the following severe impairments: arthritis, postural orthostatic tachycardia syndrome ("POTS"), gastritis and duodenitis, thyroid gland, Ehlers-Danlos, and obstructive sleep apnea/sleep disorder. Tr. 285.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. Tr. 287. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

/ / /

>she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [She] can frequently balance and stoop, but occasionally kneel, crouch and crawl. [She] can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery.

Tr. 287.

At step four, the ALJ found that the Plaintiff was able to perform her past relevant work. Tr. 292. The ALJ then made the alternative finding at step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite her impairments, including cashier, self-service store attendant, hotel housekeeper, small products assembler I and II. Tr. 294. Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ committed reversible errors, including improperly rejecting Plaintiff's symptom testimony and improperly rejecting the medical opinions of Glenn Huerta-Enochian, MD, and Robin McKelvey, MD. Pl. Br. at 5, 12.

### I.   Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to

permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[2] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At her hearing, Plaintiff testified that her symptoms began in 2019, and worsened progressively over time. Tr. 319. Plaintiff stated she has uncontrolled gastric issues that cause spontaneous nausea and vomiting. *Id*. She stated joint pain and dislocations limit her ability to function normally, and that she is "pretty much stuck at home." Tr. 320. She experiences increased fatigue from minimal activity, including "just walking." Tr. 321. She stated she currently lives alone, which is difficult, but that living back with her parents would not be an option. Tr. 323. She can shop for groceries with the aid of a walker or mobility device, provided

---

[2] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

6 – OPINION AND ORDER

she can sit when necessary. Tr. 323-24. She was able to complete her college degree but testified that she would have not been able to do so without disability accommodations. Tr. 317-18.

The ALJ discounted Plaintiff's symptom testimony, concluding Plaintiff's statements about the intensity, persistence, and limiting effect of her symptoms were inconsistent with her treatment records and activities of daily living.

### A. Treatment History

The ALJ discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence and treatment history. Tr. 288, Def. Br. at 2. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722–23 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

The ALJ's reasons for rejecting Plaintiff's subjective symptom testimony fall short of the clear and convincing standard. For example, the ALJ rejected Plaintiff's claims, in part, because an evaluation for rheumatoid arthritis showed "normal range of motion and no synovitis in small hand joints, wrists, elbows, shoulders, hips, knees, ankles, and toes, except some generalized joint laxity." Tr. 288, citing Tr. 1174. However, the testing was performed to rule out rheumatic disease, not to assess Plaintiff's Ehlers Danlos or POTS. Notably, at that same visit, Plaintiff scored seven out of nine in joint hypermobility tests, which is consistent with her Ehlers Danlos diagnosis. She was also confirmed to have Hashimoto's thyroiditis, which is consistent with her

testimony and records documenting consistent low energy and fatigue. Tr. 1474-75. The ALJ's reasoning here is unclear and unsupported.

The ALJ's conclusion that Plaintiff failed to pursue a recommended course of medical treatment is similarly flawed. Tr. 289, citing Tr. 1022, 1477. First, as the ALJ noted, Plaintiff reported that her symptoms improved following an iron infusion in January 2020. However, the ALJ failed to consider records stating that the positive effects from the infusion soon after abated. Tr. 1009, 1010, 1279. Second, Plaintiff was never prescribed additional iron treatments; she was only told to return to recheck her iron levels in three months at which time it would be determined whether additional infusions would be necessary. Tr. 1022. At her March 2020 iron level recheck, she was noted to have normal iron levels, and even iron saturation "just a little bit high"; records note a plan to recheck her iron levels again in three months. Tr. 1120. No records contain further recommendations for additional iron infusion treatments. Thus, Plaintiff's failure to pursue additional iron infusion treatments is likely based on medical recommendation, rather than a failure to pursue recommended treatment, as implied by the ALJ.

The ALJ relied on treatment recommendations including prescription medications and graduated exercise therapy to discount Plaintiff's symptom testimony regarding her POTS and small fiber neuropathy. Tr. 289, citing Tr. 1481. Here, again, the fails to explain how these recommendations contradict Plaintiff's symptom testimony. Plaintiff's complaints related to POTS include dizziness, fainting, and tachycardia; specialists discussed graduated exercise programs, which would require Plaintiff to go through months of exercise in a horizontal position to regulate her heart rate and blood pressure before moving on to upright position exercises. Tr. 1483. Additionally, she was prescribed a trial of a medication for POTS, but subsequent records show that trial medication was not successful. Tr. 1187, 1490. Without more,

8 – OPINION AND ORDER

it is unclear how these treatment recommendations contradict or undercut Plaintiff's symptom testimony.

### B. Activities of Daily Living

The ALJ rejected Plaintiff's testimony based on her daily activities. Tr. 288. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

Here, the ALJ's discussion of Plaintiff's daily activities is absent entirely from his symptom testimony analysis. Although the ALJ discussed Plaintiff's daily activities within the context of medical opinion evidence for the purpose of discounting two medical opinions, this is not sufficient to also discredit Plaintiff's testimony. An ALJ errs if he fails to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. By confining his analysis of Plaintiff's daily activities to the medical opinion evidence, the ALJ denies this Court the opportunity to meaningfully review the ALJ's reasons for discounting Plaintiff's testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting

9 – OPINION AND ORDER

ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted).

## II. Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly consider the supportability and consistency of the medical opinions of Dr. Glenn Huerta-Enochian, MD, and Dr. Robin McKelvy, MD. For disability claims filed on or after March 27, 2017, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

Under Ninth Circuit caselaw, ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). While the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

In October 2021, Dr. Huerta-Enochian submitted a medical opinion letter in support of Plaintiff's disability claim. Tr. 1468-69. He stated Plaintiff has been his patient since 2017 and that she has a number of physical conditions which "impair her energy and contribute to chronic fatigue, including POTS, small fiber neuropathy, Hashimoto's autoimmune hypothyroidism, []

hyper flexibility, and likely Ehlers-Danlos syndrome." Tr. 1468. According to Dr. Huerta-Enochian, Plaintiff's conditions "impose serious limitations on her ability to function in a work setting." *Id*. He opined that Plaintiff would "become fatigued to the point that she would not sustain focus and or be able to perform physical work" after working for approximately two hours. Tr. 1469. He further stated that Plaintiff would not be capable of work even at the sedentary level and could not "be on her feet for more than an hour [] without [] increased physical impairment and exhaustion." *Id*. Plaintiff would "have absences and tardiness due to her conditions" and "[a]ny reasonable employer would terminate her shortly after starting." *Id*.

Dr. McKelvey submitted a medical opinion form in March 2022, noting Plaintiff had been in her care since March 2020. She listed Plaintiff's multiple diagnoses, including POTS, optic neuritis, small nerve neuropathy, Hashimoto thyroiditis, ADHD, major depressive disorder, insomnia, daytime hypersomnia, and mast cell activation syndrome. Dr. McKelvey opined that Plaintiff's POTS is "so severe that minimal movement produces symptoms." Tr. 1473. In her opinion, Plaintiff becomes "so rapidly and severely fatigued that she needs to lie down on the floor within 15 minutes." *Id*.

The ALJ concluded Dr. Huerta-Enochian's and Dr. McKelvy's opinions were not persuasive because they were inconsistent with Plaintiff's daily activities and the medical evidence, and the limitations assessed were not supported by the record.

The ALJ's conclusions regarding the medical opinion evidence are not supported by substantial evidence. For example, the ALJ found that Dr. Huerta-Enochian's opinion limiting Plaintiff to no more than an hour or two of work at a time and lifting less than five pounds, conflicted with Plaintiff's ability to successfully completed her college degree. Tr. 291. This reasoning, however, must fail because Plaintiff testified that she received accommodations

12 – OPINION AND ORDER

through Disability Access Services, including accommodations for poor attendance and for submitting assignments later than the due date. Even with the accommodations in place, Plaintiff testified she struggled to attend class and earned poor grades. Only when her school transitioned to fully online was Plaintiff able to achieve better academic progress, as she testified the online format permitted additional resting time. Tr. 316-17. Plaintiff further testified that it took her much longer that normal to complete her degree and that she could not have completed the requirements without disability accommodations. *Id*. Thus the ALJ's reliance on Plaintiff's ability to work at her own pace in her home to obtain a degree does not undercut the limitations assessed by Dr. Huerta-Enochian.

The ALJ's reliance on Plaintiff's activities of daily living, including her ability to work five hours a day, seven days a week as a "streamer while attending college" is similarly deficient. Tr. 290. Plaintiff's work as a streamer ended in February 2020, shortly after her alleged onset date and there is no indication what level of physical exertion was required for this work. Indeed, at the hearing, the vocational expert (VE) noted how difficult the streaming job was to classify, finally settling on "entertainer" or "cocktail waitress" but noting that anything specific was "really hard." Tr. 326-27. Nor did the ALJ clarify with Plaintiff what level of physical exertion was required to perform this work. Similarly, the ALJ also cited Plaintiff's former work as a farm hand, working "12-16 hours per day, six days a week" but failed to note that Plaintiff's work as a farm hand ended almost a year and a half before her alleged onset date. Tr. 550. These daily activities are not, therefore, substantial evidence conflicting with the medical opinion evidence.

/ / /

/ / /

### III. Remedy

Plaintiff argues that this Court should use its discretion and remand for the immediate payment of benefits. A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stosne v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted)).

The court finds that the credit-as-true standard is met here. The ALJ committed harmful legal error. Furthermore, it is clear to the court that the record has been fully developed and there are no ambiguities or gaps remaining for the ALJ to resolve. Even if the Court accepted that conflicts in the medical record remain after Plaintiff's allegations of error have been resolved in

her favor, that would not render the record incomplete. *See Jeffrey C.*, 2023 WL 4760603, at *6 (stating conflicting medical opinions are not the dispositive question in a credit-as-true analysis); *see also Dollene C. v. Kijakazi*, 2023 WL 4488162, at *4-5 (D. Or. July 12, 2023) (rejecting the argument that "divided" medical opinions require remand proceedings where the Court "specifically finds that further proceedings would serve no useful purpose here because [one physician's] opinion alone requires a finding of disability"). Finally, the court concludes that an ALJ would be required to find Plaintiff disabled based on properly crediting the discredited medical opinion evidence and Plaintiff's subjective testimony. The VE's testimony demonstrates that Plaintiff's condition precludes her from engaging in competitive employment. Tr. 333-34. As such, the Court finds that the record is fully developed and remand for further proceedings would serve no useful purpose. This case is thus remanded for the immediate payment of benefits.

## **CONCLUSION**

Because the ALJ's decision is not supported by substantial evidence in the record, the case is REVERSED and REMANDED for the immediate award of benefits.

IT IS SO ORDERED.

DATED this 30th day of September 2024.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI  
United States Magistrate Judge

15 – OPINION AND ORDER